1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10                          SACRAMENTO DIVISION

11

| | |
|---|---|
| **JEFFREY D. McDONALD,** | Case No. 2:06-CV-2404 RJT |
| Plaintiff, | **ORDER GRANTING DEFENDANTS CAMPBELL AND GIBSON'S MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **ROSEANNE CAMPBELL, et al.,** | |
| Defendants. | |

18          The court, Judge Robert J. Timlin, has read and considered defendant Roseanne

19   Campbell ("Campbell") and C. Gibson ("Gibson," collectively "defendants")'s Motion for

20   Summary Judgment ("MSJ") and supporting documentation.  The court has further read and

21   considered plaintiff Jeffrey D. McDonald ("McDonald" or "plaintiff")'s opposition to the MSJ

22   and the documents attached to his opposition, defendants' reply submitted in response to

23   plaintiff's opposition, and plaintiff's supplemental "reply" in opposition to defendant Campbell

24   and Gibson's MSJ.[1]  Upon such consideration, the court rules as follows:

## I.        Background

26

27

---

28        1. Defendants Campbell and Gibson refer to plaintiff's supplemental "reply" as a "surreply."
In the instant order, the court uses plaintiff's terminology and refers to the document as a
supplemental reply.  However, both terms refer to the same document.

Pursuant to 28 U.S.C. § 1983 ("Section 1983"), plaintiff filed his original complaint in this matter on October 31, 2006, alleging First and Eighth Amendment deprivations by defendants California correctional officers C. Lewis ("Lewis") and Jeffrey L. Baker ("Baker") as well as the instant moving defendants.  At that time, plaintiff was incarcerated at Mule Creek State Prison ("MCSP") located in Ione, California.  As the primary factual basis for plaintiff's complaint, he asserted, *inter alia*, that while housed at MCSP from mid-June 2005 through the end of 2005, correctional officers Lewis and Baker subjected plaintiff to a series of sexually lewd and abusive verbal threats, that defendant Baker physically assaulted plaintiff on at least two occasions, and that defendant Gibson retaliated against plaintiff for making accusatory statements regarding Lewis by placing plaintiff in administrative segregation and refusing to transfer plaintiff to another building within MCSP.

Pursuant to the screening requirements set forth in 28 U.S.C. § 1915A(a) with respect to prisoner civil rights complaints, on April 12, 2007, the assigned magistrate judge concluded that plaintiff's complaint stated colorable claims against Baker and Gibson but dismissed plaintiff's claims as alleged against Lewis and Campbell.  Plaintiff was provided with an opportunity to amend his complaint and did so by filing an amended complaint on May 30, 2007.  In screening the amended complaint, the magistrate judge recommended that Lewis be dismissed from the action and that the suit proceed against defendant Campbell only in her official capacity.  The findings and recommendations of the magistrate judge were approved and adopted by the district court, the Honorable Morrison C. England, on May 28, 2008.

Plaintiff's amended complaint sets forth three claims entitled as follows: (1) "Violation of Prisoners [sic] First and Eighth Amendment Right to be Free From Verbal Sexual Abuse, Verbal Abuse; and Retiliation [sic] to Silence Victom [sic]; (2) "Violation of Prisoners [sic] Eight [sic] Amendment Right [sic] to be Free From the Physical Insinuation of Sexual-Abuse; and (3) Violation of Prisoners [sic] Eighth Amendment Right to Have Personal Safty [sic]."  While plaintiff divides his amended complaint into three discrete claims, the alleged facts with respect to each claim heavily overlap, and as articulated above, each claim rests on the asserted deprivation of plaintiff's Eighth Amendment right.

As to the first claim, plaintiff asserts such claim against all three remaining defendants Campbell, in her official capacity as warden of MCSP ("Warden Campbell"), Gibson, and Baker. As in the original complaint, claim one addresses sexually-charged insults allegedly directed at plaintiff by correctional officer Lewis. The injury alleged primarily constitutes emotional and mental distress. McDonald avers that Warden Campbell is liable for the alleged verbal abuse because, as the acting warden of MCSP, she knew that Lewis would engage in such abusive conduct. Furthermore, plaintiff contends that defendant Gibson is liable with respect to claim one because Gibson could have had plaintiff transferred to another building within MCSP away from Lewis, but instead, Gibson refused the transfer and also verbally threatened plaintiff with placement in administrative segregation as retaliation because plaintiff stated he was going to report Lewis's conduct to the Inspector General of the California Department of Corrections and Rehabilitation ("CDCR"). Claim one further includes allegations of verbal abuse perpetrated by correctional officer Baker against plaintiff. Plaintiff does not expressly reallege within this claim the phsyical abuse perpetrated by Baker.

The second claim centers on the alleged physical abuse imposed on plaintiff by Baker. Specifically, plaintiff avers that while he was bending over to pick up a dustpan, Baker forcefully poked plaintiff in the buttocks with Baker's nightstick, which caused plaintiff to fall forward and hit his head against a locker resulting in neck, head, and upper-back injuries. In addition, McDonald alleges that Baker taunted McDonald with sexual insults and slapped McDonald's buttocks. Moreover, plaintiff alleges that as the acting warden of MCSP, defendant Campbell was aware of Baker's propensity to commit such lewd and physically injurious conduct but nonetheless allowed Baker to maintain his assigned position as a correctional officers whose duties involved personal interaction with inmates. Claim two makes no mention of defendant Gibson.

With respect to claim three, plaintiff alleges that he was deprived of  his Eighth Amendment right to personal safety as an inmate when Warden Campbell and other unknown individuals "applied an institutional policy of transferring an inmate who has problems with staff to a different prison without any consideration for the safety of the inmate." Am. Compl, ¶ 56.

1   Specifically, plaintiff alleges that he was transferred to "New Folsom" (presumably, Folsom

2   State Prison ["FSP"]), and as a result, was subject to threats and physical attack by inmates at

3   FSP.  As with claims one and two, plaintiff repeats his allegation that defendant Campbell, as the

4   acting warden at MCSP, is liable for his injuries pursuant to supervisorial liability.  In addition,

5   plaintiff repeats his allegations that defendants Baker and Lewis directed verbal, sexually-based

6   insults at plaintiff and also physically injured him (a reference, this court assumes, to defendant

7   Baker's alleged conduct).  Plaintiff makes no express factual or legal allegations against

8   defendant Gibson by this claim.

9       As to all three claims, plaintiff seeks injunctive relief "including but not limited to, an order

10  halting any adverse transfer away from M.C.S.P. that could be considered retaliation, or any

11  other retaliation instigated and/or ratified by any of the defendants."  *See, e.g.*, Am. Compl. ¶ 62.

12  In addition, he seeks compensatory damages, punitive damages, attorneys' fees, and costs of suit.

13  On December 11, 2008, this action was reassigned to the undersigned judge for all further

14  proceedings.

15      On June 26, 2009, defendants Campbell and Gibson filed the instant MSJ.  Defendants

16  submitted the following documents in conjunction with their MSJ:  (1) their statement of

17  undisputed facts; (2) the declaration of defendants' counsel, addressing plaintiff's various

18  transfers regarding his locations of incarceration; (3) the declaration of defendant Gibson,

19  including the Administrative Segregation Unit Placement Notice Gibson filled out when he

20  placed plaintiff in administrative segregation after one of plaintiff's confrontations with Lewis;

21  and (4) defendant Campbell's declaration, which also includes various attached, internal MCSP's

22  documents addressing plaintiff's allegations of abuse by Lewis and Baker and investigations

23  conducted into those allegations (documents most of which are also attached to plaintiff's

24  amended complaint).

25      The court received plaintiff's opposition on January 7, 2010.  While plaintiff includes a

26  separate declaration, he also treats his memorandum of points and authorities in opposition to

27  defendants' MSJ as a declaration by swearing under penalty of perjury that the facts contained

28  within the memorandum are true and by signing the memorandum.  Plaintiff does not include a

1   statement of undisputed facts or a statement of disputed facts.  He does include over forty pages

2   of exhibits, including but not limited to his own declaration, his opposition to a separate

3   discovery motion currently pending before the court, many of the same internal MCSP

4   documents and reports submitted by defendants, declarations of various inmates incarcerated at

5   MCSP during the same time period as plaintiff, responses to interrogatories allegedly completed

6   by defendants, various other discovery requests and supplemental and further responses by

7   defendants, as well as a habeas corpus petition filed in state court and purported copies of

8   photographs of his MCSP cell.

9       Defendants filed their reply on February 2, 2010.  Defendants do not include further

10  documentary evidence with their reply.  However, defendants submit evidentiary objections to

11  plaintiff's exhibits A through H attached to his opposition, recognizing that there are no exhibits

12  labeled "E" or "G."  Plaintiff then submitted to the court a supplemental "reply" in opposition to

13  defendants' MSJ dated February 28, 2010.  Defendants moved to strike the supplemental reply

14  on March 24, 2010.  On that same date, defendants also filed with the court a stipulation between

15  themselves and plaintiff regarding defendant Campbell's previous suspensions of defendant

16  Baker.

17  **II.      Legal Standard**

18      Summary judgment is appropriate when "the pleadings, depositions, answers to

19  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

20  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

21  of law.  FED. R. CIV. P. 56(c).

22      When ruling on a motion for summary judgment, the court must view the facts and draw

23  any reasonable inferences in the light most favorable to the non-moving party.  *T.W. Elec. Serv.,*

24  *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing *Matsushita*

25  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)); *Chevron*

26  *Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  Thus, the court cannot make

27  credibility determinations or weigh conflicting evidence at this stage.  *T.W. Elec. Serv.*, 809 F.2d

28  at 630-31.  While the moving party bears the initial burden of demonstrating an absence of a

1   genuine issue for trial, it need not fully disprove the other party's case.  *Anderson v. Liberty*

2   *Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317,

3   323-25, 106 S. Ct. 2548 (1986).  For example, when the non-moving party bears the burden of

4   proof on a particular claim or defense, the moving party can meet its burden by demonstrating

5   that the non-moving party has failed to present any genuine issue of material fact.  *Musick v.*

6   *Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).  In addition, the materiality of facts is determined by

7   the parties' pleadings.  However, absent prejudice to the opposing party, the court may, in its

8   discretion, consider unpled theories or facts raised by a party's claims or defenses on a summary

9   judgment motion.  *See, e.g., Ahmad v. Furlong*, 435 F.3d 1196, 1201-02 (10th Cir. 2006);

10   *Miranda de Villalba v. Coutts & Co. (USA) Intern.*, 250 F.3d 1351, 1353 (11th Cir. 2001).

11   After the moving party makes the requisite showing, the "opposing party may not rely

12   merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as

13   otherwise provided in [Rule 56] - set out specific facts showing a genuine issue for trial.  If the

14   opposing party does not so respond, summary judgment should, if appropriate, be entered against

15   that party." FED. R. CIV. P. 56(e)(2); *Anderson*, 477 U.S. at 248-49.  In addition, a party cannot

16   establish a genuine issue of material fact by merely making assertions in its legal papers.  Instead,

17   there must be specific, admissible evidence identifying the basis for the parties' dispute.  *S.A.*

18   *Emprese de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th

19   Cir. 1980).  That is, the evidence set forth by the non-moving party must be sufficient, taking the

20   record as a whole, to allow a rational jury to find for the non-moving party.  *Matsushita Elec.*

21   *Indus.*, 475 U.S. at 587.  As the Supreme Court has stated, "[t]he mere existence of a scintilla of

22   evidence...will be insufficient; there must be evidence on which the jury could reasonably find

23   for [the non-moving party]."  *Anderson*, 477 U.S. at 252.

24   **III.      Discussion**

25   **A.   Evidentiary Objections**

26   Defendants object to plaintiff's exhibits A through H, arguing that such documents have not

27   been properly authenticated, lack foundation, contain improper opinion testimony and/or hearsay,

28   are irrelevant, and are otherwise conclusory, citing FED. R. EVID. 401-403, 602, 701, 802, and

901.  Defendants properly note "that unauthenticated documents cannot be considered on a motion for summary judgment.  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (document may be authenticated by declaration of individual having personal knowledge of matters set forth in document and creation of document); *see also, Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (*quoting U.S. v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not authenticated simply by attaching it to an affidavit....The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery.").  With the above rules and standards in mind, the court hereby rules as follows regarding defendants' evidentiary objections.

1.  Exhibit A, Declaration of Darius Sims - Objection **sustained**;

2.  Exhibit D, portion of CDC 114D (Administrative Segregation Placement Notice - Objection **overruled**;

3.  Portion of CDC 115 (Rule Violation Report dated Dec. 12, 2005, Log. No. B12/05-045) - Objection **sustained**;

4.  "Unidentified copies of envelopes and documents" - While the court recognizes that plaintiff includes occasional copies of photographs and/or copies of envelopes, defendants' objections makes it unclear to which "documents" attached to plaintiff's opposition they object, for example, by referring to a page number.  While the court will not rely on any inadmissible evidence in ruling on the instant motion (including unauthenticated and irrelevant copies of envelopes, copies of photographs, or other miscellaneous documents), defendants' objections are also rather vague.  Therefore, at present, the court cannot properly rule on such objections;

5.  One-page excerpt copy of McDonald's Writ of Habeas Corpus Petition, filed in Lassen County on April 23, 2001 - Objection **sustained**;

6.  Exhibit F (miscellaneous letters from McDonald and non-party inmates):  McDonald's March 15, 2008 letter and declaration of Floyd Akles - Objections **overruled**; declarations of Trivon Lockett, Frank Bracamonte, and Sammy Norman - Objections **sustained**;

1      7.  CDC 115 (Rules Violation Report, Log. No. B07/05-057) - Objection **overruled**;

2      8.  Black and white copies of photos that appear to depict inmate cells and property -

3      Objection **sustained**;

4      9.  Exhibit H ("Respondent's Supplemental Return" from McDonald's Writ of Habeas

5      Corpus filed in Lassen County) - Objection **sustained**.

6          The court informs all parties that it will not consider inadmissible evidence in ruling on the

7   instant motion.  However, defendants fail to clearly raise their objections to any documents

8   labeled Exhibits B and C.  Therefore, the court refrains from ruling on such objections unless

9   those documents become pivotal to a ruling on the substantive merits of the MSJ.

10         On March 24, 2010, defendants Warden Campbell and Gibson filed a motion to strike

11  plaintiff's supplemental reply ("motion to strike"), reasserting many of the same evidentiary

12  objections made with respect to plaintiff's opposition as to allegations contained in the

13  supplemental reply and asking the court not to consider the supplemental reply when ruling on

14  the instant MSJ.  As such, the court addresses the motion to strike here.  More specifically,

15  defendants argue that the court should strike plaintiff's supplemental reply because: (1) it does

16  not comply with the local rules of the Eastern District of California; (2) plaintiff has violated the

17  terms of the February 9, 2010 telephonic status conference by filing the supplemental reply; (3)

18  plaintiff has also violated a protective order entered into between plaintiff, the instant moving

19  defendants, and defendant Baker by filing the supplemental reply, *see* Doc. No. 105; (4)

20  plaintiff's supplemental reply does not comply with a myriad of federal evidentiary and

21  procedural rules; and (5) plaintiff's supplemental reply is otherwise without any substantive

22  merit.

23         The court will deny defendants' motion to strike.  As to defendants' first three arguments,

24  those arguments demonstrate that the court may, but is not required, to strike plaintiff's

25  supplemental reply.  First, E.D. LOCAL R. 230(l), pertaining to motions in prisoner cases, does

26  not actually speak to the filing of a surreply (defendants' characterization of plaintiff's

27  supplemental reply).  Therefore, that local rule does not actually foreclose plaintiff from filing

28  supplemental briefing or otherwise lay out the procedure for filing additional briefing, even

though one might infer that the wisest course would be to seek court approval before filing any additional briefing.  Regarding the February 9, 2010 telephonic status conference, defendants correctly note that the court asked plaintiff if he intended to file a supplemental opposition based on recently disclosed documents, and he stated that he did not so intend.  However, the court did not inform plaintiff that if he changed his position, he would need to first seek permission from the court to then file a supplemental brief.  Again, plaintiff's wisest course of action would have been to seek court permission, but as a pro se litigant, he was not expressly informed that he must seek such court permission.  Finally, regarding any violation of the protective order between plaintiff and all remaining defendants, defendant Baker has since moved the court to seal the supplemental reply and that motion has been granted.  Thus, any resulting prejudice to defendant Baker or the instant moving defendants due to a violation of the protective order has been greatly minimized.  Rather than rely on these three arguments as bases to strike the supplemental reply without considering its contents, the court finds the more judicious course (especially in light of plaintiff's pro se status) to be to consider the supplemental reply in the event that it in fact demonstrates there is a triable issue of material fact regarding plaintiff's claims for relief.

Regarding the last two objections, those objections essentially address the merits of plaintiff's supplemental reply.  In other words, defendants have not articulated why the court should refrain from addressing the arguments in the supplemental reply by, in the first instance, not considering the supplemental reply.  Instead, these arguments demonstrate that even if the court examines plaintiff's arguments as articulated in the supplemental reply, plaintiff still has not presented admissible, probative evidence showing that there is a triable issue of material fact regarding any of his alleged claims for relief.  Thus, the court does not construe these latter two objections by defendants as requests for the court to strike the supplemental reply in the first instance.  Instead, the court fully addresses the merits of the supplemental reply in Footnote 12, *infra*.

**B.   Undisputed Facts**

Defendants submitted a Statement of Undisputed Facts ("SUF") with their moving papers as required by local rules.

Eastern District Local Rule 260(b) states that "[a]ny party opposing a motion for summary judgment or summary adjudication *shall* reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial."  (emphasis added).  In addition, "[t]he opposing party may also file a concise 'Statement of Disputed Facts,' ["SDF"] and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication."  *Id.*

Plaintiff failed to file a required SUF or a permissive SDF.  As such, defendants argue that this court should grant summary judgment for them because plaintiff has failed properly to contest that the facts they submitted as undisputed are disputed.  Further, in conjunction with defendants' assertion that plaintiff only provides inadmissible evidence in support of his opposition, defendants also contend that plaintiff's opposition briefing does not make clear how any of his attached exhibits and their content create a genuine issue of fact as to any of the claims in the amended complaint.

The court is mindful that a pro se litigant's pleadings must be liberally construed.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  Furthermore, at the summary judgment stage, the court "treat[s] the opposing party's papers more indulgently than the moving party's papers."  *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).  Yet, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  While plaintiff's failure to submit a SUF or to otherwise clearly cite to particular parts of his submitted attachments as admissible evidence supporting his opposition counsels in favor of granting defendants' MSJ, the court will not proceed to grant defendants' MSJ without itself wading through plaintiff's submissions and determining if there are indeed triable issues of material fact.  As such, the court provides an analysis of what facts are disputed and undisputed.

The following facts are undisputed material facts supported by admissible evidence:

Defendant Warden Campbell worked for the California Department of Corrections and Rehabilitation ("CDCR") from October 15, 1974, until her retirement on December 26, 2007.

1   She was the acting warden at MCSP from October 2004 through December 2006.  She currently

2   provides the CDCR with assistance on certain projects on an as-needed basis but in her limited

3   employment, has no authority to respond to a court-ordered injunction.

4       Plaintiff McDonald submitted a written complaint to defendant Warden Campbell

5   indicating that he had been subjected to verbal abuse by correctional officers Lewis, defendant

6   Baker, and defendant lieutenant Gibson and to physical abuse by Baker.  Such abuse, as reported

7   by plaintiff, involved obscene and inappropriate sexual comments and conduct.  Plaintiff

8   requested that the misconduct be investigated.  On or about November 23, 2005, defendant

9   Campbell, in her position as the acting MCSP warden, ordered MCSP's Investigative Services

10  Unit ("ISU") to complete a fact-finding investigation regarding plaintiff's allegations.  While

11  plaintiff clearly contests the ultimate determination by ISU, the Acting Investigative Lieutenant,

12  D. Starnes, found that plaintiff's allegations were not sustained.

13      On February 10, 2006, defendant Warden Campbell completed a Second Level Appeal

14  Response informing plaintiff that upon a second level of review, his allegations against Baker,

15  Lewis, and Gibson were found to be unsubstantiated.  On June 5, 2006, the Inmate Appeals

16  Branch issued a Director's Level Appeal Review Decision informing plaintiff that his allegations

17  against the aforementioned individuals had been reviewed and evaluated by administrative staff,

18  that a fact-finding investigation had been completed, and that plaintiff's appeal was denied.

19  Again, although plaintiff disputes the ultimate determination that no abuse took place, plaintiff

20  was provided with such responses by MCSP and CDCR staff.

21      Although not as a result of the allegations against defendant Baker by plaintiff McDonald,

22  defendant Campbell, as the acting warden at MCSP, suspended defendant Baker from September

23  12, 2005 to September 19, 2005 (six days), and from October 3, 2005 to October 10, 2005 (six

24  days)[2/] for violations of the California Code of Regulations, Title 15, Sections 3391(a),[3/] 3400,[4/]

25  

26      2.  As stated *supra*, the facts relating to defendant Warden Campbell's suspension of
    defendant Baker were provided to the court through a stipulation of the parties filed March 24, 2010.

27  

28      3.  15 Calif. Code of Reg. § 3391(a) states: "Employees shall be alert, courteous, and
    professional in their dealings with inmates, parolees, fellow employees, visitors and members of the
    public.  Inmates and parolees shall be addressed by their proper names, and never by derogatory or

and 3413(a)(2).[5/]   Defendant Baker's suspensions were the result of a settlement stipulation entered into between defendant Baker, his counsel for proceedings before the California State Personnel Board, and staff counsel for the CDCR, before Administrative Law Judge Kimberly M. Pipkin, on January 4, 2006.

Defendant Gibson was employed by CDCR as a correctional lieutenant at MCSP from May 2005 until he retired from the CDCR in October 2006.   As a lieutenant, Gibson's work responsibilities included interviewing inmates suspected of improper or illegal conduct to determine how to handle such situations, including whether to place the inmates in administrative segregation pursuant to Title 15 of the California Code of Regulations.   Inmates may be placed in administrative segregation when they threaten the safety of CDCR staff or the security of the institution.   When an inmate is placed in administrative segregation, it was defendant Gibson's usual practice to complete a CDC 114-D form (Administrative Segregation Unit Placement Notice) in order to advise the inmate of the reasons for his placement in administrative segregation and to inform the inmate that the Institution Classification Committee will thereafter determine the inmate's appropriate housing and program placements.

On July 24, 2005, correctional officer Lewis conducted a search of plaintiff's cell that was initiated while plaintiff was away from his cell.   The stated reason for the search was that officer Lewis and another officer suspected that plaintiff had inmate-manufactured alcohol in his

---

slang reference.   Prison numbers shall be used only with names to summon inmates via public address systems.   Employees shall not use indecent, abusive profane, or otherwise improper language while on duty.   Irresponsible or unethical conduct or conduct reflecting discredit on themselves or the department, either on or off duty, shall be avoided by all employees."

4. 15 Calif. Code of Reg. § 3400 state: "Employees must not engage in undue familiarity with inmates, parolees, or the family and friends of inmates or parolees.   Whenever there is a reason for an employee to have personal contact or discussions with an inmate or parolee or the family and friends of inmates and parolees, the employee must maintain a helpful but professional attitude and demeanor.   Employees must not discuss their personal affairs with any inmate or parolee."

5. 15 Calif. Code of Reg. § 3413(a)(2) states: "Employees of the department shall not engage in any other employment or activity inconsistent or incompatible with employment by the department.   Conduct deemed to fall in such categories includes, but is not limited to the following:...Employment or participation in any activity of an illegal nature."

possession, referred to as "pruno."[6]  While Lewis was searching the cell, plaintiff returned to his

cell.  At that time, plaintiff informed the searching officers that he had a right to stay and witness

the search.  Officer Lewis told plaintiff to leave the area while Lewis completed the search.

Plaintiff refused to completely leave the area but instead sat at a table directly outside the cell.

Plaintiff was placed in handcuffs by the searching officers and then escorted to the program

office where he was placed in a holding cell pending an interview with defendant Gibson

regarding the incident outside his cell.

   Officer Lewis indicated to defendant Gibson that Lewis thought plaintiff was a threat to his

(Lewis's) safety during the incident because plaintiff would not leave the cell area.[7]

   While at the program office, plaintiff told Gibson that plaintiff would rather go to "the hole"

(prison slang for administrative segregation) than return to his cell or building and deal with

officer Lewis.[8]

   Defendant Gibson filled out a CDC 114-D form with respect to this incident.  The form

---

   6. Plaintiff does not dispute that the officers contended he had pruno.  Instead, he disputes that what the officers thought was pruno - *i.e.*, a plastic bag with a fruit product that was wrapped in a blanket - was instead just fruit crisp from the previous night's dinner that plaintiff was planning to give to another inmate.  Plaintiff was not formally reprimanded for having pruno based on this incident.

   7. Plaintiff does dispute the veracity of Lewis's statement.  That is, plaintiff avers that Lewis was not being truthful in making assertions that he feared for his safety and contends that officer Lewis could not reasonably have feared for his safety.  However, plaintiff does not clearly dispute in his declaration or in any submitted evidence that such statements were made and further does not dispute that defendant Gibson was informed that officer Lewis feared for his safety.

   8. In his opposition and/or his declaration in support of his opposition, plaintiff states as follows: He informed Gibson that officer Lewis had been sexually harassing plaintiff and that plaintiff asked to be transferred to another building.  He told Gibson that plaintiff and his family planned on reporting Lewis to the Inspector General.  Defendant Gibson told plaintiff to forget about his problems with Lewis.  Defendant Gibson also told plaintiff that he either needed to return to his building or that he would be placed in administrative segregation.  Defendant Gibson refused to transfer plaintiff to another building and placed plaintiff in administrative segregation.  In his opposition papers, plaintiff does not deny that defendant Gibson gave plaintiff the option to return to his building or be placed in administrative segregation, and plaintiff admits that he said he would rather go to administrative segregation than return to his building.  Plaintiff, in his declaration, speculates that Gibson placed plaintiff in administrative segregation as retaliation because plaintiff said he was going to report officer Lewis to the Inspector General.

states the following:

> On Tuesday, July 24, 2005 at approximately 0655 hours, you were found to be in possession of a substance, which was suspected as being inmate manufactured alcohol. Officer Lewis ordered you to leave the area as he was conducting a search and you failed to comply.  It was necessary for you to be placed into mechanical restraints, escorted to the program office and placed into a holding cell based on your refusal.  You stated 'I want to go to the hole rather than go back over there and deal with that officer."  Officer Lewis stated that he feels that you are a threat to his personal safety.  The suspected substance was not verified as pruno.  Due to the aforementioned, you are now deemed a threat to the safety and security of the Institution.  You are being placed into Administrative Segregation pending Administrative Review by Institutional Classification Committee for appropriate program and housing needs.  You will be seen by the Institutional Classification Committee within 10 days of this order to establish your current and future housing and program needs.  Additionally, you will be issued a Rules Violation Report (CDC-115), charging you with the Specific Act: Failure to obey orders.  Inmate MCDONALD is a participant in the Mental Health Delivery System at the CCCMS Level of Care.

Gibson's stated reasons for placing plaintiff in administrative segregation was pursuant to Section 3335, Title 15 of the California Code of Regulations because Lewis expressed fear for his safety.  15 Calif. Code of Reg. § 3335(a) ("When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation.").  Plaintiff was kept in administrative segregation for one day.

Plaintiff received from defendant Gibson a Rules Violation Report ("RVR") stemming from the incident that charged him with failure to obey orders.  Defendant Gibson did not participate in the preparation for or disciplinary hearing regarding the RVR.[9]  Defendant Gibson was not a member of the Institutional Classification Committee ("ICC") at MCSP and had no decision-making authority regarding plaintiff's retainment in administrative segregation or plaintiff's housing and program placement.

Plaintiff currently is incarcerated at California State Prison, Los Angeles County ("CSP-LAC") at Lancaster.  Prior to his placement at CSP-LAC and during the pendency of this

---

9.  Plaintiff does provide evidence that defendant Gibson participated in another RVR charging plaintiff with conspiracy to introduce a controlled substance (methamphetamine) for distribution.  However, that incident is wholly unrelated to the allegations in the instant litigation.

14

litigation, plaintiff was transferred from MCSP to Salinas Valley State Prison.

**C.  Defendant Campbell**

In moving for summary judgment as to all claims asserted against defendant Warden Campbell, she contends that: (1) she cannot be held liable under a theory of supervisorial liability for any alleged verbal harassment of plaintiff by correctional officers Lewis and Baker; (2) as to all claims, she cannot be held liable to plaintiff under a theory of respondeat superior liability or supervisorial liability; (3) plaintiff's request for injunctive relief as to her is moot because he is no longer housed at MCSP, and she is no longer the acting warden; (4) defendant Campbell is entitled to Eleventh Amendment immunity; and (5) she is alternatively entitled to qualified immunity.

At least one of Warden Campbell's arguments clearly speaks to the fact that she remains in this suit only in her official capacity.  However, her decision to include certain additional arguments and the framing of such arguments, in conjunction with plaintiff's opposition, make it clear to the court that plaintiff and Warden Campbell at least partially misunderstand the nature of her continued involvement in this suit.

Both the magistrate judge's initial, complete dismissal of plaintiff's claims in his original complaint against defendant Campbell with leave to amend as well as the magistrate judge's later findings with respect to the amended complaint against her and ultimate recommendation that the suit proceed against Campbell only in her official capacity as warden of MCSP, demonstrate that the district court judge found plaintiff's pleadings inadequately alleged personal involvement by Campbell in any deprivation of the constitutional rights of plaintiff.

Specifically with respect to the original complaint, the magistrate judge informed plaintiff that Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff."  Hereinafter, first Screening Order; Doc. No. 8, 4:11-12.  In addition, the magistrate judge informed plaintiff that to the extent he claimed Campbell's involvement stemmed from her supervisorial position as a warden, plaintiff needed to specifically allege "the causal link between [Campbell] and the claimed constitutional violation...."  *Id*. at 4:20-21.  The magistrate judge concluded that

McDonald, in the original complaint, failed to link Warden Campbell to any acts resulting in his alleged constitutional injuries.

However, in screening the original complaint, the magistrate judge informed plaintiff that he need not allege or prove personal involvement by Warden Campbell (either directly or due to her supervisorial role) in the alleged rights deprivations to the extent he sought injunctive relief against her in her official capacity. *Id*. at 5:4-8.  Instead, plaintiff only need name an official who could appropriately respond to a court ordered injunction if one was ultimately ordered by the court as appropriate relief for a constitutional deprivation perpetrated by a different defendant. Furthermore, the magistrate judge made clear that official-capacity suits are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985).  "As such, [official capacity suits are] no different from [suits] against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70, 109 S. Ct. 2304 (1989).  In addition, the magistrate judge advised plaintiff that because official-capacity suits are essentially claims against the state, the plaintiff must plead and prove that a policy or custom of the state governmental entity of which the official is an agent was the moving force behind the constitutional deprivation. *Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166.  Because plaintiff had yet to allege a state policy or procedure, the magistrate judge also dismissed any claims in the original complaint against Campbell that could be construed as official-capacity allegations.

In issuing later findings and recommendations to the district court with respect to plaintiff's amended complaint (findings which were approved and adopted in full by the district court), the magistrate judge again found that plaintiff failed to sufficiently plead a link between defendant Warden Campbell and any resulting constitutional deprivation suffered by plaintiff. Indeed, the magistrate judge wholly recited that section of his first Screening Order finding that plaintiff failed to demonstrate any causal connection between Warden Campbell and the alleged constitutional rights deprivations, under any theory of liability, supervisorial or otherwise.  As such, the magistrate judge recommended that only the official capacity suit for an injunction be allowed to go forward.  Essentially, defendant Warden Campbell remained in the instant suit in

16

name only upon the district court's approval and adoption of the magistrate judge's finding and recommendations with respect to the amended complaint.

Furthermore, because suits against state officials in their official capacity are essentially suits against the state, "when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Hafer*, 502 U.S. at 25 (citing FED. R. CIV. P. 25(d)(1) and FED. R. APP. P. 43(c)(1)).[10/]  Indeed, FED. R. CIV. P. 25(d) makes clear that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party."

Thus, Warden Campbell confuses the issue when she argues that an injunction is unavailable because she is no longer the acting warden at MCSP or, for example, when she argues that she is entitled to qualified immunity, an immunity only available when an officer is sued in his or her individual capacity.  Furthermore, Warden Campbell's broad assertion of Eleventh Amendment immunity is misplaced as "the Eleventh Amendment does not bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or [prospective] injunctive relief.  *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982).  Therefore, to the extent plaintiff can prove, *inter alia*, that a state policy or procedure led to a deprivation of his constitutional rights, the currently acting warden is the properly named party for purposes of seeking any prospective injunctive relief.

Thus, the crux of the issue is whether plaintiff has presented any evidence that a state policy or procedure was the moving force behind the alleged deprivation of his constitutional rights.  Warden Campbell contends that plaintiff cannot make such a showing.  Indeed, she asserts that he has not even alleged a state policy or procedure.  This later assertion is without merit.  For example, plaintiff's amended complaint expressly raises a state policy or procedure in claim three.  Plaintiff alleges that defendant Warden Campbell "applied an institutional policy of transfering [sic] an inmate who has a problmes [sic] with staff to a different prison without any consideration for the safety of the inmate."  Am. Compl., ¶ 56.  McDonald refers to his

---

10.  Now FED. R. CIV. P. 25(d) and FED. R. APP. P. 43(c)(2).

temporary transfer to Folsom State Prison ("FSP") in which he avers that he was subject to physical abuse at FSP at the hands of FSP inmates.  *See also*, Facts Section of Am. Compl. ¶ 30 ("It is common knowlage [sic] that there is a policy in the C.D.C.R. to transfer an inmate when that inmate has trouble with staff.  It is also common knowlage [sic] among the inmates on Ayard New Folsom [i.e. FSP] that the yard was not considered as a sensitive needs yard due to attacks on the SNY inmats [sic], that had happened about one year prior to McDonald's transfer.").  Plaintiff contends that he was transferred to FSP in December 2006 and represents that he was ultimately transferred back to MCSP on some later unidentified date.  He also claims that in March of 2007, he was beat up by three inmates at FSP who targeted him for being a "sensitive needs" inmate.

Plaintiff, however, has failed to present evidence suggesting the existence of a triable issue of material fact as to claim three of the amended complaint against defendant Warden Campbell, and particularly as to a policy or procedure applied by her (or other unidentified MCSP employees) to deprive plaintiff of his Eighth Amendment right.  With respect to his own transfer to FSP, plaintiff provides the court with no probative evidence that the transfer was somehow tied to his complaints against MCSP staff and was authorized by defendant Warden Campbell pursuant to an institutional policy or procedure of the CDCR.  Plaintiff has failed to produce a scintilla of evidence that there is or was an *institutional* policy of transferring complaining inmates out of MCSP to FSP.  Moreover, he provides the court with no evidence demonstrating retaliatory-motivated transfers by Warden Campbell or other MCSP officials against other MCSP inmates because they exercised their constitutional rights under the First Amendment.  Indeed, the only declaration by another prisoner transferred out of MCSP, namely Darius Sims ("Sims"),[11] does not make clear if Sims contends he was transferred to another prison due to

---

11.  The court recognizes that it already ruled against the admissibility of the Sims declaration  based on defendants' objections.  However, by referring to the Sims declaration here, the court merely highlights how plaintiff has failed to raise a triable issue of material fact by relying on inadmissible evidence that, even if the court were to consider, would not change the outcome of his action against defendants Gibson and Warden Campbell.  Any reference to other declarations to which the court has already sustained objections are included within the discussion section of this order for the same reasons.

complaints made by him regarding staff misconduct.  Sims may be implying as much, but his single, vague declaration in conjunction with McDonald's conclusory, factually-deficient assertion that such a policy exists, are not sufficient evidence of any institutional policy such as to create a genuine issue of fact.

As an alleged related institutional policy, plaintiff avers in his amended complaint that inter-prison transfers are effectuated by MCSP in accordance with an institutional policy or procedure without any consideration for the safety of inmates and that it was common knowledge that FSP was unsafe for prisoners like McDonald.  However, these assertions too are not supported by any admissible evidence.  McDonald provides no evidence that institutional staff at MCSP failed to consider his safety needs when transferring him to FSP or that staff systemically engages in such lack of safety considerations when transferring other inmates.  Furthermore, while McDonald avers in the amended complaint that he was attacked at FSP, he has not submitted any admissible evidence demonstrating that FSP is in fact an extremely violent institution or that "special needs" transferees consistently are attacked at FSP and that such information is readily known to MCSP or more generally, the CDCR.  Thus, plaintiff has failed to demonstrate that there is a triable issue of material fact regarding his claim that a state policy was the moving force behind a deprivation of his Eighth Amendment rights (*i.e.*, the state's transfer policies failed to keep McDonald safe from violent FSP inmates) by Warden Campbell.

Finally, to the extent plaintiff in claims one and two of the amended complaint contends that in 2005 there was an institutional policy at MCSP of disregarding prisoner complaints against correctional officers and then subjecting such inmates to repeated exposure to known, dangerous correctional officers, such an averment is premised solely on the alleged conduct of defendant Warden Campbell as plaintiff avers, *inter alia*, that Warden Campbell knew correctional officer Baker had harassed other inmates, including the use of verbal and physical sexual abuse, ignored such problems, and allowed Baker to remain in contact with inmates.  However, as stated above, the district court, upon recommendation of the magistrate judge, has already determined that plaintiff failed to sufficiently plead in his amended complaint a causal link between defendant Warden Campbell's alleged conduct and any alleged harm suffered by plaintiff and as a result

allowed Warden Campbell to remain as a defendant in her official capacity only.  As such

Campbell's alleged conduct cannot be imputed to the state as evidence of an unconstitutional

state policy or procedure.[12/]

---

12.  With respect to defendant Campbell specifically, even if the court were to reconsider its decision that plaintiff inadequately plead a connection between defendant Campbell's conduct and Baker's alleged verbal and physical sexual abuse of plaintiff, plaintiff has still failed to present any probative evidence raising a triable issue of material fact regarding Campbell's knowledge of Baker's relevant, past misconduct.  For example, during a February 9, 2010 telephone status conference between all parties, the court  asked plaintiff if he intended to file a supplemental opposition to the instant MSJ based on recent documents produced to plaintiff by defendant Baker. Plaintiff informed the court that he did not intend to file such a supplemental opposition.  However, defendants Campbell, Gibson, and plaintiff informed the court that they would instead provide the court with a stipulation setting forth facts regarding certain suspensions of Baker by Campbell. Plaintiff was ordered to file the stipulation with the court no later than March 2, 2010.  *See* Doc No. 110.  As of March 2, 2010, the court had not received any stipulation.  Instead, without authorization from the court, plaintiff provided the court with a supplemental "reply" in opposition to defendants' MSJ, dated February 28, 2010, and received by the court on March 8, 2010.  By that reply, plaintiff again attempts to set forth that Campbell, by reason of her personally suspending Baker, knew of multiple instances in which Baker was reprimanded for improper behavior, including sexual harassment of inmates, prior to Baker's alleged abuse of plaintiff.  On March 24, 2010, defendants Warden Campbell and Gibson filed a motion to strike plaintiff's supplemental reply and also filed the stipulation regarding Warden Campbell's suspensions of Baker.

Regarding the stipulation, the stipulation alone does not demonstrate that defendant Warden Campbell knew of past relevant misconduct by Baker that should have put her on notice that Baker would likely deprive plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment.  The stipulation merely informs the court of the particular code sections that formed the bases for Warden Campbell's past suspensions of Baker.  However, the parties do not stipulate to the underlying conduct by Baker resulting in the violations of those code sections.  Furthermore, the rather broad language of the code sections, as quoted *supra*, does not provide the court with a means to determine what kind of inappropriate conduct defendant Baker likely engaged in and of which defendant Warden Campbell was on notice due to her resulting suspensions of Baker.  At most, the court might infer that defendant Baker used inappropriate language with other inmates in the past, as two of the cited code sections explicitly address appropriate boundaries regarding verbal communications between correctional officers and inmates.  However, none of the code sections expressly addresses physical sexual abuse perpetrated by officers against inmates.  Plaintiff has been informed multiple times that lewd, verbal sexually-based comments, while objectionable, do not arise to Eighth Amendment deprivations.  Thus, the stipulation does not evidence a causal connection between defendant Warden Campbell's conduct and plaintiff's alleged physical sexual abuse by defendant Baker.

With respect to the supplemental reply, as stated *supra,* the court will deny defendants' motion to strike the supplemental reply and instead proceeds to address the merits of the supplemental reply.  However, analyzing the merits of the supplemental reply, plaintiff still does not provide the court with any documentary evidence which he contends supports his assertions that Baker was investigated and reprimanded for misconduct by, *inter alia*, defendant Campbell that should have put her on notice that defendant Baker would likely deprive plaintiff of his Eighth

Furthermore, plaintiff provides no other admissible evidence demonstrating that Baker was known by MCSP to be a physical, sexual threat to inmates prior to the subject incident between him and Baker, that other authorities at MCSP systemically failed to respond appropriately to inmate complaints, or that MCSP consistently places inmates under the control of violent correctional officers when it is on notice of the officers' violent proclivities.  Indeed, the only additional evidence submitted with respect to correctional officer Baker is the declaration of Frank Bracamonte.[13/]  Bracamonte states that while he was an inmate at MCSP between 2002 and 2004, he witnessed Baker sexually harass and abuse other inmates.  However, the declaration does not speak to any inmate complaints made against Baker or the failure of MCSP to adequately respond to such complaints, if any.  As such, plaintiff has failed to raise a triable issue of material fact with respect to any state policy or procedure causing him to be sexually abused by Baker, either verbally or physically.  In addition, the declaration of inmate Sims, which contains only  general allegations that defendant Warden Campbell ignored inmate complaints

---

Amendment right to be free from cruel and unusual punishment.  The court is cognizant of the fact that pursuant to its October 27, 2009 discovery order, the court ordered Baker to produce certain documents to plaintiff by only allowing plaintiff to take notes regarding the content of such documents but not allowing plaintiff to obtain actual photocopies of such documents.  However, plaintiff does not provide the court with his notes of the content of those documents, and he does not cite to the bates-stamped documents the court ordered defendant Baker to produce to plaintiff, which might provide the court with an explanation of why actual documents were not produced in conjunction with his initial opposition or supplemental reply.  Further, plaintiff provides no other admissible evidence in support of his assertions that defendant Warden Campbell allowed Baker to continue to supervise and interact with inmates although she was aware of his personal characteristics rendering him dangerous and abusive to inmates.   Plaintiff has signed his supplemental reply under penalty of perjury but nevertheless plaintiff has not made clear that he has any personal knowledge of the events he details in the reply, either because he personally reviewed certain documents or because he obtained such information through deposing the defendants or propounding interrogatories.  A party cannot rely only on assertions in his briefing to oppose summary judgment.  As stated *supra*, plaintiff must come forward with the appropriate probative evidence demonstrating that there is a genuine issue of material fact.  Finally, plaintiff does not make clear if Baker was ever previously charged by inmates with verbal sexual and/or *physical* sexual abuse.  As plaintiff has already been informed, verbal sexual harassment likely does not constitute an Eighth Amendment deprivation of which Campbell had notice and should have protected plaintiff.  Thus, not only has plaintiff proceeded without court permission to file a supplemental reply, but the additional reply nonetheless fails to affect the outcome of the instant MSJ.

13.  The court includes reference to the Bracamonte declaration for the same reasons articulated in footnote 11.

regarding staff misconduct, is far too vague to create a triable issue of material fact. Thus, the court concludes that plaintiff has failed to produce significant probative evidence creating a triable issue of material fact regarding whether a state policy or procedure resulted in a deprivation of plaintiff's constitutional rights under the Eighth Amendment by defendant Warden Campbell.

The court, however, notes that it is somewhat unclear if a state policy or procedure *must* be implicated when the relief sought is prospective injunctive relief against a state official in his or her official capacity. Clearly the requirements of Section 1983 must be met, including the establishment of a constitutional deprivation warranting the sought for injunctive relief. However, both *Hafer* and *Graham* dealt with *damages* suits against state officers and included discussions regarding the distinction between official-capacity and individual-capacity (also referred to as personal-capacity) suits seeking damages relief. In acknowledging that official-capacity suits require "more" - *i.e.*, proving a state policy or procedure was the moving force behind the deprivation - the Supreme Court relied on the seminal *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978), similarly imposing an "official policy or custom requirement" to the establishment of municipal liability under Section 1983. However, *Monell*'s policy or custom requirement does not apply when Section 1983 plaintiffs only seek prospective declaratory or injunctive relief against a municipality or its officers. *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 644 (9th Cir. 2008); *Chaloux v. Killeen*, 886 F.2d 247, 250-51 (9th Cir. 1989). Thus, though the issue is rather confused, with the *Hafer* and *Graham* Court relying heavily on *Monell*, one might argue that the state policy or procedure requirement also does not apply when a plaintiff sues state officers for only prospective injunctive relief.

However, even if plaintiff need not prove a state policy or procedure to obtain prospective injunctive relief against an official sued only in his/her official capacity, he nonetheless has failed to establish that he can obtain the *type* of injunctive relief set forth in his amended complaint. Again, plaintiff seeks an injunction preventing his transfer out of MCSP "that could be considered retaliation, or any other retaliation instigated and/or ratified by any of the defendants." *See, e.g.*, Am. Compl., ¶ 45:6-7. Defendants argue that plaintiff's request for injunctive relief is

moot because he has already been transferred to another custodial institution.[14/]  *See, e.g., Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (when a prisoner challenges his conditions of confinement and seeks injunctive relief, transfer to another prison typically renders the request for injunctive relief moot unless the prisoner demonstrates that he will likely be transferred back).  However, that line of case law is not directly on point, because in those scenarios, the plaintiff obtained the actual relief sought, *i.e.*, a transfer from his current place of incarceration to another institution.  Here, plaintiff was trying to *avoid* transfer and has since been transferred.  If the court were to infer that plaintiff still means to pursue an injunctive remedy as requested in his amended complaint, it has to assume that plaintiff now wishes to be transferred back to MCSP, as plaintiff seems to contend that he was indeed transferred from MCSP in retaliation for airing his grievances against correctional officer Lewis, among others.

The real deficiency in plaintiff's position is that plaintiff has failed to present any admissible evidence linking his transfer to any alleged retaliatory conduct by defendants Warden Campbell or Gibson, or any other MCSP or CDCR staff.  That is, plaintiff has failed to present any evidence suggesting a genuine issue of fact as to whether his transfer from MCSP deprived him of his constitutional rights or that his exercise of his constitutional rights resulted in a retaliatory transfer.  Indeed, the facts regarding his ultimate transfer remain shrouded in mystery.  In his opposition, plaintiff does not submit any evidence as to when he was ultimately transferred by MCSP, who authorized his transfer, or MCSP's reason for the transfer.  Any implied assertion

---

14.  While none of the parties in their briefing on the instant motion informs the court of exact dates of plaintiff's transfer within the CDCR, the admissible evidence shows that plaintiff was transferred to Salinas Valley State Prison ("SVSP") during the course of the present litigation and now resides at California State Prison, Los Angeles County ("CSP-LAC").  Specifically, plaintiff informed the court on July 3, 2008, that he was transferred to SVSP, slightly under two years from the date of the original complaint.  Doc. No. 31.  Furthermore, plaintiff notified the court with a document dated August 8, 2009, that he had been transferred from SVSP to CSP-LAC.  Doc. No. 85.  These dates are far removed from the facts underlying the amended complaint.  Further, defendant Warden Campbell stepped down as acting warden in December 2007, and defendant Gibson retired in October 2006.  These facts undermine plaintiff's conclusory allegations that any transfer of him from MCSP likely resulted from retaliation by the named defendants Warden Campbell and Gibson.

that the transfer was retaliatory is wholly conclusory.  While the court more fully discusses the requirements of a retaliation claim, *infra*, with respect to defendant Gibson, plaintiff must prove that he was retaliated against as punishment for the exercise of his constitutional rights and that the retaliatory conduct did not serve any legitimate penological goals.  As mentioned, plaintiff has failed to produce any probative evidence pertaining to his ultimate permanent transfer out of MCSP.  Consequently, the court concludes that plaintiff has not submitted any evidence creating a genuine issue of fact as to a link between his exercise of his constitutional rights and his ultimate transfer by Warden Campbell, Gibson, or other officials of CDCR.[15/]

Based on the foregoing discussion, the court will grant summary judgment for defendant Warden Campbell on plaintiff's official capacity suit against defendant Warden Campbell or the current, successor warden of MCSP for prospective injunctive relief preventing his transfer from MCSP and, implicitly, seeking a transfer back to MCSP based on all claims in the amended complaint against defendant Warden Campbell for deprivation of plaintiff's Eighth Amendment right.

### D.   Defendant Gibson

As a preliminary matter, the court notes that plaintiff does not state factual allegations in his amended complaint or submit evidence in conjunction with his opposition to the instant summary judgment motion suggesting that defendant Gibson engaged in the conduct alleged in the second or third claim of the amended complaint.  Accordingly, the court will grant defendant Gibson summary judgment as to the second and third claims of the amended complaint.

The court now proceeds to address whether defendant Gibson is entitled to summary judgment with respect to any deprivations of plaintiff's constitutional rights alleged in claim one

---

15.  Having failed to present any evidence regarding the circumstances of his transfer from MCSP, the court also notes that "prisoners generally have no constitutionally-protected liberty interest in being held at, or remaining at, a given facility."  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  In other words, the scope of injunctive relief sought by plaintiff far exceeds the constitutional harms alleged.  *See* 18 U.S.C. § 3626(a)(1)(A) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff....The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.")

of the amended complaint.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475 (1993). The Eighth Amendment prohibits cruel and unusual punishment and "embodies the broad idealistic concepts of dignity, civilized standards, humanity and decency. *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285 (1976). "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392 (1981) (*quoting Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590 (1958)).

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones...." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994) (*quoting Rhodes*, 452 U.S. at 349). In addition to placing restraints on the conduct of prison officials, the Eighth Amendment also places affirmative duties on such officials. For example, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194 (1984).

However, to make out an Eighth Amendment violation, a plaintiff must prove that two requirements are met. *Farmer*, 511 U.S. at 834. First, the alleged constitutional deprivation objectively must be "sufficiently serious[.]" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991). That is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (*quoting Rhodes*, 452 U.S. at 347). When a Section 1983 plaintiff contends that a prison official failed to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*.

As to the second requirement, an inmate must show that a prison official has a "sufficiently culpable state of mind," as "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson*, 501 U.S. at 297 (internal quotations and citations omitted). In

cases challenging the conditions of confinement, the state of mind standard is "'deliberate indifference' to inmate health or safety.'" *Farmer*, 511 U.S. at 834 (*quoting Wilson*, 501 U.S. at 302-03). In defining the deliberate indifference standard, the Supreme Court has held "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

As to the first claim, it appears plaintiff makes two contentions. First, defendant Gibson deprived plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment when defendant Gibson refused to transfer plaintiff to another building but instead placed him in administrative segregation (explained in more detail below). Second, plaintiff also contends that defendant Gibson placed plaintiff in administrative segregation to punish plaintiff for speaking out against correctional officer Lewis and reporting him to the Inspector General, *i.e.*, an act of retaliation. Hence plaintiff's citation to the First Amendment as well as the Eighth Amendment in claim one of the amended complaint.

Prisoners have protected "First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (internal citations and quotations omitted). As plaintiff was previously informed by the magistrate judge in the first Screening Order, "[a] prisoner suing prison officials under [Section] 1983 for retaliation must allege that he [or she] was retaliated against for exercising his [or her] constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) ( per curiam) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Further, courts evaluate retaliation claims in light of the deference that must be accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). The prisoner must submit evidence demonstrating a link between the exercise of his constitutional rights and the defendant's allegedly retaliatory action. *Id*. And the prisoner must ultimately demonstrate that

his First Amendment rights were chilled by the retaliatory action.  *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

To the extent plaintiff alleges an Eighth Amendment deprivation claim against defendant Gibson based on cruel and unusual punishment, he has not presented significant probative evidence to create a genuine issue of fact that Gibson, in placing plaintiff in administrative segregation, deprived plaintiff of the minimal civilized measures of life's necessities or that such incarceration was under conditions posing a substantial risk of serious harm to plaintiff and that Gibson was deliberately indifferent to plaintiff's health and safety in doing so.  Plaintiff contends that he was harmed by Gibson because, without transfer to another building, he again was subject to verbal harassment by Lewis.  *See* Pl.'s Opp. at 4 ("Defendant Gibson knew there was a dangerous situation evolving but did nothing to protect Plaintiff's right to be free from violence and personal safety, but instead Plaintiff was sent to Administrative Segregation....).  However, any harm to plaintiff associated with correctional officer Lewis's verbal threats to plaintiff has already been held by the court not to rise to the level of an Eighth Amendment deprivation. Therefore, subjecting plaintiff to continued verbal contact with Lewis by refusing to transfer plaintiff did not as a matter of law deprive plaintiff of his Eighth Amendment right.

Furthermore, no where in his amended complaint or opposition does plaintiff challenge the *conditions* of his one-day confinement in administrative segregation.  Thus, plaintiff has presented no evidence suggesting that the conditions of administrative segregation at MCSP fell below the irreducible minimum of decency required by the Eighth Amendment.  *See, e.g., LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) (inmate's possession of prohibited rope made from towels or bed sheets did not warrant five-day continuous confinement in a strip cell that remained in almost total darkness day and night and contained no sanitary facilities other than a "Chinese toilet," i.e. a hole in the floor at the corner of the cell; holding confinement violated cruel and unusual punishment clause of the Eighth Amendment).  Therefore, plaintiff has failed to create a triable issue of material fact regarding whether placement in administrative segregation for one day resulted in a deprivation of his Eighth Amendment right to be free from

1  cruel and unusual punishment.[16/]

2      With respect to the retaliation basis of plaintiff's first claim for relief against Gibson, *i.e.*,

3  Gibson placed plaintiff in administrative segregation because plaintiff was exercising his First

4  Amendment right to express a complaint in the form of an administrative grievance against

5  Lewis, plaintiff also has failed to present any probative evidence creating a triable issue of

6  material fact.  As a preliminary matter, the court acknowledges that the amended complaint does

7  not clearly allege that Gibson retaliated against plaintiff by placing him in administrative

8  segregation.  Indeed, the allegations of retaliation in the first claim for relief are rather minimal

9  and vague.  While plaintiff uses the term "retaliation" in the first claim, the allegations with

10  respect to Gibson center on Gibson's alleged *refusal to transfer* plaintiff and assert that plaintiff

11  was harmed because Gibson refused to transfer plaintiff to another building.[17/]  However, likely

12  in response to the defendants' framing of the issue in their MSJ, plaintiff's opposition now

13  contends that claim one is really about Gibson's retaliatory conduct of placing plaintiff in

14  administrative segregation as punishment for plaintiff's statements that he was going to report

15  officer Lewis to the Inspector General.  In light of the liberal construction of pro se pleadings, the

16

17      16.  The court also notes that plaintiff states in his declaration and opposition (though not
18  clearly in his amended complaint) that defendant Gibson told defendant Baker to retaliate against
   plaintiff.  However, this conclusory assertion is not supported by any admissible evidence and is not
19  part of the operative pleadings.  In other words, plaintiff does not state that he has personal
   knowledge of any statements made by Gibson to Baker and does not present any evidence
20  surrounding the interactions between Gibson and Baker.  Plaintiff contends that the factual
   allegations section of his amended complaint sets forth that Gibson asked Baker to retaliate against
21  plaintiff.  However, the section of the amended complaint to which plaintiff refers describes how
   Baker called plaintiff "Slick" instead of "McDonald" and then Baker implied that Gibson may have
22  referred to plaintiff as "Slick."  Am. Compl., ¶ 26.  These limited allegations in the amended
   complaint in conjunction with the lack of admissible evidence, do not establish that there is a triable
23  issue of material fact regarding whether Gibson asked Baker to sexually assault plaintiff.

24
25      17.  *See e.g.*, Am. Compl., First Claim for Relief ¶ 40 ("McDonald is informed and believes,
   and thereon alleges [sic] that defendant Lt. Gibson is in a position of authority such that he could
26  arrange, or could have ordered to be arranged, a transfer for McDonald away from building 9 where
   McDonald was subjected to retaliation and was fearful for his well-being and safty [sic].  McDonald
27  is further informed and believes, and thereon alleges that in fact Lt. Gibson heard and knew of
   McDonald's request for a transfer, of the alleged abuse and retaliation and of McDonald's transfer
28  and instead tried [sic] to make him forget his request for a building transfer by using his own
   threats.")

court proceeds to address whether there is a triable issue of material fact that Gibson retaliated

against plaintiff by placing plaintiff in administrative segregation when plaintiff told Gibson

about plaintiff's intent to report officer Lewis's harassing conduct.

The critical deficiency regarding plaintiff's retaliation claim against Gibson is that there is

no factual dispute that Gibson gave plaintiff the option to either return to his building or be

placed in administrative segregation.  Plaintiff has failed to present evidence demonstrating that

he had a right to an immediate transfer from his building due to his antagonistic relationship with

Lewis.  As such, with plaintiff having been given a choice to either return to his building or be

placed in administrative segregation, there is no reasonable inference from the undisputed

evidence that Gibson's alleged retaliatory animus was the but for cause of plaintiff's placement

in administrative segregation.  Instead, plaintiff chose to go into administrative segregation rather

than return to his building.  *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) ("To state a

claim of retaliation an inmate must allege the violation of a specific constitutional right and be

prepared to establish that but for the retaliatory motive the complained of incident...would not

have occurred."), *relied on in Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Furthermore, none of the admissible evidence discloses that during his encounter with

Gibson, defendant Gibson foreclosed plaintiff's option to return to his building or that plaintiff

finally agreed to return to his building but then defendant Gibson required plaintiff to be placed

in administrative segregation nonetheless.  Indeed, the Facts Section of plaintiff's amended

complaint states as follows:

> McDonald also told Lt. Gibson that he was reporting C/O Lewis to the Inspector General.
> Lt. Gibson tells McDonald that he is following the wrong course of action and, "You
> need to leave all this alone and go back to your building."  McDonald requested to be
> moved to another building so he would not have to be subjected to C/O Lewis' [sic]
> abuse anymore.  Lt. Gibson tells McDonald, "You can go back to your building or you
> can go to the hole."  McDonald said, "I would rather go to the hole than return to that
> buildimg [sic] and have to deal with that officer's shit."  McDonald was then told he
> would be going to the hole.

Am. Compl., ¶¶ 24-25.

By the factual allegations in his amended complaint, plaintiff admits that he was given a

choice to either return to his building or be placed in administrative segregation.  Plaintiff's

declaration and opposition support the undisputed fact that he was given a choice by defendant Gibson to return to his (plaintiff's) building.  Instead, plaintiff explains in his opposition *why* he said he would rather go to administrative segregation, *i.e.*, because he was afraid to return to his assigned building.  But, plaintiff does not present evidence that he was never given the option to return to his building.  *See* Pl.'s Decl., ¶ 9 ("...and the only reason Plaintiff express [sic] going to Administrative Segregation, because Plaintiff was afraid to return to the building with Lewis."); *see also* Pl.'s Opp. at 3 (After plaintiff informed Gibson that plaintiff and his family were going to report Lewis "...Gibson told plaintiff just forget about all of this and to go back to the building with Mr. Lewis because Gibson was ready to send Plaintiff to Administrative Segregation. Plaintiff told Gibson that Plaintiff was afraid and could not go back to the building with Mr. Lewis fearing more harrassment [sic], and plaintiff did not wat [sic] to deal with the harassment of Mr. Lewis.  Plaintiff begged to be sent to a different building.  Gibsons stated that he was going to send plaintiff to the hole instead of to a different building.  Plaintiff told Gibson that he [would] rather go to the hole instead [of] having to go back to the building.").[18/]  Thus, plaintiff has not presented evidence establishing a triable issue of material fact suggesting that Gibson placed plaintiff in administrative segregation as retaliation for plaintiff's stated intention to report officer Lewis to higher administrative authorities.

The court will grant defendant C. Gibson's motion for summary judgment on the first claim of the amended complaint

//

//

//

//

//

---

18.   While not relevant to the inquiry of whether plaintiff was sent to administrative segregation in response to his complaints against Lewis, the court acknowledges that plaintiff appears to represent in his opposition, declaration, and amended complaint that he was in fact transferred to another building upon his release from the one-day administrative segregation as he requested (though again, his statements with respect to a building transfer are rather vague). However, he does not inform the court of any additional facts with respect to that transfer.

**IV.        Disposition**

For the foregoing reasons, the court orders that the summary judgment motion of defendants C. Gibson and Roseanne Campbell, in her official capacity as warden of MCSP, be granted as to plaintiff Jeffrey D. McDonald's amended complaint and each and every claim therein.

Dated:  April 2, 2010                          ___/s/ Robert J. Timlin_____

U.S. DISTRICT JUDGE